UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOAN C. LIPIN,

                            Plaintiff,

            -against-                                    07 Civ. 226 (RJH)

                                                         **MEMORANDUM
DAVID E. HUNT and DANSKE BANK,                           ORDER AND OPINION**

                            Defendants.

---

        *Pro se* plaintiff Joan C. Lipin ("Plaintiff") is the daughter of Dr. Theodore Lipin

("Dr. Lipin").  Dr. Lipin died in Stockholm, Sweden on October 6, 2005.  This action is

one of several involving Plaintiff in which she asserts ownership of properties once

owned by Dr. Lipin that have been claimed as assets of Dr. Lipin's estate, including an

antique coin collection kept in a safe deposit box in Denmark and real property located at

302 Hio Ridge Shores South, in Bridgton, Maine (the "Moose Pond Property").

Defendant David E. Hunt ("Hunt") is the attorney representing Evelyn Ellis, the Special

Administrator of Dr. Lipin's estate appointed by the Cumberland County Probate Court

in Maine.  (Am. Compl. ¶ 48; Mem. of Law in Support of Def. Hunt's Mot. to Dismiss

("Hunt Br.") 3 & n.3.)  Hunt is a domiciliary of Maine.  (Am. Compl. ¶ 5.)  Defendant

Danske Bank is a bank organized under the laws of Denmark.  (Am. Compl. ¶ 7.)

Danske Bank maintains offices and a banking facility in Copenhagen, Denmark.  (Am.

Compl. ¶¶ 4, 6.)

        In this action, Plaintiff contends that Danske Bank improperly blocked her access

to a safe deposit box located in Copenhagen, Denmark to which she was a "joint

signatory," granted access to the safe deposit box to Swedish attorney Ulf Bergquist ("Bergquist")[1], and participated in the conversion of her property by Bergquist. (Am. Compl. ¶¶ 4, 24–26, 38–41; Def. Danske Bank A/S's Mot. to Dismiss the Am. Compl. ("Danske Bank Br.") 3.) The safe deposit box contained, among other things, Dr. Lipin's coin collection, to which Plaintiff alleges she has a right of immediate possession. Plaintiff asserts claims against Hunt based on his filing of a "false and fraudulent" tax return on behalf of Dr. Lipin's estate that, *inter alia*, lists the Moose Pond Property as an asset of the estate. She also asserts claims against Hunt for various actions taken against her in the probate proceedings in Maine and in other related litigation. For example, Plaintiff alleges claims under 42 U.S.C. §§ 1983, 1985, and 1986 for Hunt's violation of her Constitutional rights by maliciously pursuing sanctions against her in the Maine proceedings and by initiating an action to evict her from the Moose Pond Property. Plaintiff asserts all causes of action against each defendant, alleging that Hunt and Danske Bank acted as part of one or more conspiracies to deprive her of property that she owned, to injure her person and her reputation, and to violate her Constitutional rights. (*See, e.g.,* Am. Compl. ¶¶ 18, 20, 30, 36, 38, 40, 41, 46, 47, 66, 77, 79–84, 86, 88, 100, 101, 103.)

*Related litigation*

Plaintiff's alleged ownership of the coin collection and the Moose Pond Property has been the subject of related litigation in state, federal, and Swedish courts.

---

[1] Bergquist was appointed by the Swedish Probate Court as administrator of Dr. Lipin's estate in Sweden. (Def. Danske Bank A/S's Mot. to Dismiss the Am. Compl. ("Danske Bank Br.") 3.)

In probate proceedings in Maine, Plaintiff has sought to admit to probate Dr. Lipin's unsigned 1989 will, every page of which bears the word "VOID" and Dr. Lipin's initials. (Hunt Br. 3; Apr. 6, 2007 Decl. of Howard Chen ("Chen Decl.") Ex. 4 (Pet. for Formal Probate of Will or Appointment of Personal Representative or Both, *In re Estate of Lipin*, No. 05-1642 (Cumberland Co. Probate Ct. Nov. 21, 2005)).)

Plaintiff also filed an action in Maine Superior Court asserting seven causes of action against Dr. Lipin's estate, her sister, her brother, her brother's ex-wife, and Ms. Ellis seeking, *inter alia*, injunctive relief, declaratory relief, and a constructive trust on the estate based on her alleged rights to the coin collection and the Moose Pond Property. (*See* Chen Decl. Ex. 3 (2nd Am. Compl., *Lipin v. Estate of Lipin*, No. 05-145 (Me. Super. filed Jan. 10, 2007)). In a recent decision, the Maine court granted summary judgment for defendants and dismissed all of Plaintiff's claims against all defendants, including her claims that she was the rightful owner of the coin collection and the Moose Pond Property. Notably, in dismissing Plaintiff's breach of contract claim against the estate, the court held that there was no contract between Plaintiff and Dr. Lipin regarding transfer of either the coin collection or the Moose Pond Property, that Dr. Lipin had not made an *inter vivos* gift of the coin collection to Plaintiff,[2] that Dr. Lipin retained title to the Moose Pond Property at the time of his death, and that Plaintiff never recorded a deed indicating her ownership of the Moose Pond Property. *See Lipin v. Estate of Lipin*, No. RE-05-145, slip op. at 2–3, 7–9 (Me. Super. Oct. 23, 2007).

---

[2] With respect to Plaintiff's breach of contract claim, the Maine court found that "[t]here was no delivery of the coin collection and, accordingly, no *inter vivos* gift of the coin collection was ever made to Joan." *Lipin v. Estate of Lipin*, No. RE-05-145, slip op. at 9 (Me. Super. Oct. 23, 2007). The Maine court interpreted Plaintiff's breach of contract claim as asserting rights to the coin collection based on a February 1990 letter from her father, and held unambiguously that this letter, which in fact had never been sent to Plaintiff, constituted neither an *inter vivos* gift nor a contract. *See id.*

Plaintiff filed another action in the District of Maine asserting many of the same causes of action that are asserted in this action against persons including Ms. Ellis, Ms. Ellis's attorney, and Judge Joseph Mazziotti, the judge presiding over the probate of Dr. Lipin's estate. *Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2198876, slip op. at *1 (D. Me. July 26, 2007). A magistrate judge for the District of Maine has recommended dismissal with prejudice of all Plaintiff's claims against all defendants, finding, *inter alia*, that Dr. Lipin held title to the Moose Pond Property at the time of his death. *Id.* at *10–11.

Plaintiff also filed an action in New York state court against Bergquist. This action was removed by Bergquist to federal court and is now pending before this Court. *See* Am. Compl., *Lipin v. Bergquist*, 07 Civ. 7833 (S.D.N.Y. filed Dec. 3, 2007). In her Amended Complaint against Bergquist, Plaintiff alleges, *inter alia*, that Bergquist participated in the theft and sale of her father's coin collection and has conspired with Hunt and various others to steal Plaintiff's property (including the coin collection and the Moose Pond Property) and launder it through Dr. Lipin's estate to be extracted as legal fees. As discussed *infra*, the *Bergquist* Amended Complaint also purports to assert claims against Hunt and Danske Bank.

Finally, according to defendants, Plaintiff has also participated unsuccessfully in proceedings in Sweden concerning Dr. Lipin's Swedish estate, in which Plaintiff challenged Bergquist's appointment as administrator and asked the Swedish court to rule on the ownership of the coin collection. (*See* Danske Bank Br. 4; Mem. of Law in Support of Def. Hunt's Mot. for Sanctions ("Hunt Mot. for Sanctions Br.") 6.)

Defendants Hunt and Danske Bank have each filed a motion to dismiss Plaintiff's Amended Complaint. Both parties move for dismissal pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In addition, Hunt asserts lack of personal jurisdiction under Rule 12(b)(2), and Danske Bank asserts improper venue under Rule 12(b)(3). Hunt has also filed a motion for sanctions against Plaintiff pursuant to Rule 11.

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint contains 109 paragraphs charging defendants with liability for dozens of civil and criminal wrongs perpetrated as part of one or more alleged conspiracies involving defendants and many others. For purposes of a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but need not credit "legal conclusions, deductions or opinions couched as factual allegations." *See, e.g., In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). The Court interprets the Amended Complaint as stating the following relevant facts and allegations:

*Ownership of the coin collection and the Moose Pond Property*

Plaintiff was the "favorite child" of Dr. Lipin. (Am. Compl. ¶ 11.) During his lifetime, Dr. Lipin assembled a large collection of "antique coins," dating back to approximately 79 A.D., with an estimated value in excess of $1,600,000. (Am. Compl. ¶¶ 11, 12, 14.) Plaintiff alleges she "received and accepted" the coin collection as an *inter vivos* gift on February 3, 1990, and has at all times since been the owner, entitled to immediate possession. (Am. Compl. ¶ 13.) Plaintiff's claim of ownership is based on a letter dated February 3, 1990 and signed by Dr. Lipin which states, "This is to attest that

as of this date my entire numismatic collection, valued at $8,500, has been given as a gift to my daughter, Joan Lipin, who resides at 45 East 89 Street, New York, NY." (Am. Compl. ¶ 21, Ex. A.) Plaintiff does not allege that the note was ever delivered to or received by Plaintiff before Dr. Lipin's death, not does she allege that she ever took possession of the coin collection.

Plaintiff asserts ownership of the Moose Pond Property based on her "sole, continuous, and exclusive possession" since around 1984 when Dr. Lipin gave her a key to the cabin and told her she should consider herself the owner. (Am. Compl. ¶¶ 98, 101.) At the same time, Plaintiff alleges that she is the "recorded title holder, deeded tax payer, and insured property holder [of the Moose Pond Property], as shown by the Cumberland County Registry of Deeds." (Am. Compl. ¶¶ 17, 101.)

However, Defendants have provided two deeds recorded in the Cumberland County Deed Registry that appear to describe the Moose Pond Property. (Chen Decl. Ex. 1.) These deeds indicate that Dr. Lipin was the recorded owner of the Moose Pond Property. Furthermore, Plaintiff acknowledges that Dr. Lipin is the recorded title owner in a "Notice of Lis Pendens" and "Notice of Statement of Claim to be Recorded as Same as Deed" filed by Plaintiff in the deed registry (Chen Decl. Ex. 2), and in the Second Amended Complaint filed in *Lipin v. Estate of Lipin* (Chen Decl. Ex. 3).


*Access to the Danske Bank safe deposit box in Copenhagen*

Plaintiff alleges that she was a "joint signatory of more than one safe deposit box" at a Danske Bank facility in Copenhagen (Am. Compl. ¶ 4) and "maintained continuous and uninterrupted signatory power" at the time of her father's death (Am. Compl. ¶ 28).

Plaintiff alleges that Bergquist "fraudulently induced" her to make arrangements to travel to the Danske Bank offices in Copenhagen in order to examine the coins. (Am. Compl. ¶ 30.) When Plaintiff arrived at the Danske Bank offices, she was informed that Bergquist had instructed Danske Bank to bar her from accessing the safe deposit box. (Am. Compl. ¶ 34.) Plaintiff alleges that Danske Bank then refused to allow her to access the safe deposit box or to photograph and/or make a record of the coins and other property in the box. (Am. Compl. ¶¶ 37, 39) Danske Bank subsequently harassed, coercively interrogated, humiliated, and falsely imprisoned Plaintiff by "coercing her to surrender" her passport in order to photograph it. (Am. Compl. ¶¶ 36, 39.)

Plaintiff further alleges that Hunt and Bergquist "fraudulently induced" Evelyn Ellis, the special administrator of Dr. Lipin's estate, to write a letter to Bergquist on November 18, 2005 stating that Ms. Ellis was the executrix of Dr. Lipin's American will and would cooperate with Bergquist. (Am. Compl. ¶ 26.) This document was fraudulent because Ms. Ellis was not the "executrix" of Dr. Lipin's estate, as she claimed. (Am. Compl. ¶ 27.) Using this letter, Bergquist induced Danske Bank to allow him to access Dr. Lipin's safe deposit box and take possession of the coins. (Am. Compl. ¶ 28.)[3] Since then, defendants have refused to return the property (Am. Compl. ¶ 46) or to reveal its location to Plaintiff (Am. Compl. ¶ 47). Plaintiff believes that some or all of the most valuable coins and other properties have been stolen, and that Danske Bank's liability insurance is inadequate to cover Plaintiff's losses. (Am. Compl. ¶¶ 43, 44.) According

---

[3] Plaintiff alleges that Bergquist, claiming that he was acting only in Plaintiff's interests, also used the letter from Ms. Ellis to induce and coerce Plaintiff into surrendering the key to the safe deposit box to him. (Am. Compl. ¶ 29.) Plaintiff also alleges that Bergquist, as part of a conspiracy with Hunt, coerced Plaintiff into surrendering a key to the Moose Pond Property, which Bergquist then unlawfully turned over to Hunt. (Am. Compl. ¶ 88.)

to Plaintiff, Danske Bank's actions constituted gross negligence, breach of fiduciary duty, breach of duty as a bailee, and breach of the warranty of fitness, safety, and security. (Am. Compl. ¶¶ 38, 41, 43, 44.)

*The "false and fraudulent" tax returns*

In July 2006, Hunt prepared and filed a United States tax return on behalf of Dr. Lipin's estate. (Am. Compl. ¶ 46.) Plaintiff alleges that this return was "false and fraudulent" because, for example, it lists the Moose Pond Property as estate property (Am. Compl. ¶ 53), it does not list plaintiff as the "joint depositor" of the Danske Bank safe deposit box (Am. Compl. ¶ 71), it lists the estate rather than Plaintiff as the beneficiary of various insurance policies held by Dr. Lipin (Am. Compl. ¶ 58),[4] and it lists various savings bonds as estate property (Am. Compl. ¶ 64) although Hunt knew that these savings bonds had been reissued by the Treasury Department in Plaintiff's name (Am. Compl. ¶ 65).[5]

Hunt allegedly filed a second "false and fraudulent" tax return around January 2007 and paid taxes on behalf of the estate using funds that belonged to Plaintiff. (Am. Compl. ¶¶ 73–74.) Hunt engaged in "fraudulent concealment" by failing to send Plaintiff

---

[4] Plaintiff also alleges that Hunt fraudulently induced the issuers of these insurance companies to pay over $162,000 to Dr. Lipin's estate (Am. Compl. ¶ 63) though Plaintiff was in fact the beneficiary of these policies as a result of the fact that Dr. Lipin repeatedly told her she was the beneficiary and that her beneficiary status was an irrevocable gift (Am. Compl. ¶ 59). If the beneficiary of the policies was changed, Plaintiff alleges, it is because Dr. Lipin was "delusionally insane" as of March 2005. (Am. Compl. ¶ 60–62.)

[5] Plaintiff further alleges that the tax return was fraudulent because it states that Ms. Ellis is the "executor" of the estate when in fact she is the "special administrator" (Am. Compl. ¶ 51), because the Maine Probate Court was not informed of the power of attorney issued to Hunt (Am. Compl. ¶ 51), and because it lists Dr. Lipin's domicile as Sweden rather than Maine while Dr. Lipin had always intended to return to Maine (Am. Compl. ¶¶54–56).

a copy of this tax return with the letter informing her that the return had been filed. (Am. Compl. ¶ 75.)

Hunt also allegedly conspired with five others to generate an Appraisal Report for the Moose Pond Property while "falsely and fraudulently informing the appraiser" that the "Current Owner" and "Occupant" was the estate of Dr. Lipin. (Am. Compl. ¶¶ 100–02.)

*The Maine legal proceedings*

Plaintiff alleges that Hunt participated in a conspiracy with numerous others, including Bergquist and Maine Probate Judge Joseph Mazziotti, to approve the theft of Plaintiff's property and the transfer of this property to the estate of Dr. Lipin. (Am. Compl. ¶ 77–80.) Plaintiff characterizes the conspiracy as one to deprive Plaintiff of her right to equal protection under the law in violation of 42 U.S.C. § 1986. (Am. Compl. ¶ 79.) Plaintiff bases this claim on the conspirators' "selective enforcement of claims for sanctions" against Plaintiff while ignoring the sanctionable conduct of other attorneys. (Am. Compl. ¶¶ 81, 82.) Plaintiff claims that the conspirators engaged in such conduct in retaliation for her refusal to consent to the "exorbitant" and "unlawfully monopolistic" demands imposed by Maine probate lawyers on out-of-state residents, especially those from New York City. (Am. Compl. ¶¶ 80, 81.)

In addition, the conspirators caused the Maine courts to ignore Plaintiff's motions requesting the withdrawal and/or disqualification of the conspiring attorneys. (Am. Compl. ¶ 82.) The conspirators also retaliated against her by "proceed[ing] to defame and stigmatize her as being a worthless and incompetent person, and not worthy of being

accorded equal protection of the laws . . . but a person who instead deserved to be sanctioned, demeaned, [and] denied due process . . . by entering default judgments against her on the basis of *ex parte* communications by Hunt and his co-conspirators at times when it was known that it would be impossible for plaintiff to appear." (Am. Compl. ¶ 80.) All of these actions were in furtherance of Hunt's "perpetration of fraud on the courts" to obtain a "further appointment" of Evelyn Ellis in order to enable the theft and laundering of Plaintiff's property through the estate to Hunt, Bergquist, and others. (Am. Compl. ¶ 81.)

*Alleged torts against Plaintiff's person*

On January 25, 2007, Hunt unlawfully attempted to serve Plaintiff in New Jersey with an invalid writ of possession for the Moose Pond Property. (Am. Compl. ¶ 92.) The next day, Hunt "lured" Plaintiff to Portland, Maine and "maliciously harassed" her by causing Cumberland County Deputy Sheriff Sammy Rinaldi to assault and falsely imprison her by "physically accosting and holding her" and telling her she must accept a writ of possession for the Moose Pond Property or go to jail. (Am. Compl. ¶¶ 86, 93.)[6] Hunt was present for the false imprisonment of Plaintiff. (Am. Compl. ¶ 95.) Hunt and other attorneys also publicly ridiculed and disparaged Plaintiff, and encouraged Rinaldi to seize and twist Plaintiff's arm with great pressure. (Am. Compl. ¶ 96.) They also defamed Plaintiff by stating to the marshal outside the courtroom, "Do something, she is

---

[6] The writ of possession was the result of an action initiated by Hunt against Plaintiff on July 31, 2006. (Am. Compl. ¶ 94.) Plaintiff alleges that Hunt initiated this action after Plaintiff refused Hunt's July 18, 2006 "extortion demands"—that the coin collection would be sold to Plaintiff's brother Robert Lipin for less than half its value unless Plaintiff withdrew her claims to the Moose Pond Property. (Am. Compl. ¶ 94.)

disrupting the court." (Am. Compl. ¶ 96.)  Hunt and others then attempted to prevent Plaintiff from entering the courtroom by entering the courtroom as a group in an attempt to force her to be held in default.  (Am. Compl. ¶ 97.)  As a result of these actions, Hunt, "acting under color of state law," was "a co-conspirator responsible for the false imprisonment, assault and battery, [and] defamation . . . of plaintiff," by Cumberland County Sheriff Sammy Rinaldi in the Maine Superior Court on January 26, 2007.  (Am. Compl. ¶ 86.)

*Trespass on the Moose Pond Property*

Plaintiff alleges that Hunt, acting under color of state law, was responsible for the entry, trespass, and damage to the Moose Pond Property between March and June 2006. (Am. Compl. ¶¶ 87, 89–90.)  Specifically, on two occasions in 2006, Hunt and/or his agents entered the property, cut the padlocks, entered the cabin, and removed signs belonging to Plaintiff.  (Am. Compl. ¶¶ 87, 88–90.)  At some unspecified time, Hunt allegedly barred Plaintiff from the Moose Pond Property.  (Am. Compl. ¶¶ 17, 92, 101.)

**DISCUSSION**

*There is no personal jurisdiction over Hunt in New York*

Hunt has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a

plaintiff must make a prima facie showing that jurisdiction exists." *Id.* "To make such a showing, the plaintiff may rely on the complaint, affidavits, and other supporting evidence." *Warner Bros. Entertainment Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 264 (S.D.N.Y. 2007). When determining whether Plaintiff has made a sufficient showing regarding jurisdiction, the Court must accept Plaintiff's factual allegations as true. *See, e.g., Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F. 2d 194, 197 (2d Cir. 1990).

Under New York's general jurisdiction provision, a court may only exercise jurisdiction over causes of action unrelated to defendant's contacts within the state if the defendant "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its presence in this jurisdiction." *Mantello v. Hall*, 947 F. Supp. 92, 96–97 (S.D.N.Y. 1996) (interpreting New York C.P.L.R. § 301) (quoting *McGowan v. Smith,* 419 N.E. 2d 321, 323 (N.Y. 1981)). Plaintiff does not allege that Hunt engages in any "continuous or systematic" business in New York, and in her opposition brief, argues only that specific jurisdiction exists under New York C.P.L.R. § 302.[7]

New York C.P.L.R. § 302(a)(3) provides for personal jurisdiction over a defendant for a tortious act (other than defamation) committed outside the state if the

---

[7] N.Y. C.P.L.R. § 302(a) provides that personal jurisdiction may be asserted over a non-domiciliary who

    1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
    3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
        (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
        (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
    4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a) (McKinney's 2006).

defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3) (McKinney's 2006).  Plaintiff does not allege that Hunt does or solicits any business in New York or derives any revenue from services rendered in New York or from interstate or international commerce.

New York C.P.L.R. § 302(a)(1) and (2) provide that personal jurisdiction may be asserted over a non-domiciliary for a cause of action that arises from a transaction of business or commission of a tortious act (other than defamation) within the state.  N.Y. C.P.L.R. § 302(a)(1), (2) (McKinney's 2006).  None of the actions or events upon which Plaintiff bases her claims took place in the state of New York.

The only facts alleged by Plaintiff that demonstrate any connection between Hunt and the state of New York are the fact that Hunt is admitted to practice law in New York and the fact that Hunt "has corresponded and done business with [P]laintiff in New York" by mail, phone, and Internet (Am. Compl. ¶ 5), including Hunt's mailing of a copy of the allegedly fraudulent tax return to Plaintiff at her New York residence (Am. Compl. ¶ 48).

None of Plaintiff's causes of actions arise from Hunt's admission to practice in New York.  Even assuming that admission to the New York bar can be considered a transaction of business in New York and that acts taken as an attorney might "arise from" that attorney's admission to practice, all of Plaintiff's allegations relating to actions taken by Hunt in his capacity as a attorney relate to actions taken in connection with proceedings in Maine courts.  Such actions do not arise from Hunt's admission to

the New York bar in any way.  *See also BHC Interim Funding, LP v. Bracewell &*

*Patterson, LLP*, 02 Civ. 4695, 2003 WL 21467544, at *8 (S.D.N.Y. June 25, 2003)

(finding no personal jurisdiction over out-of-state law firm with clients based in New

York and attorneys admitted in New York where the plaintiff "neither alleged nor

offered evidence that [defendant law firm] has made specific efforts to make itself

known in the New York legal market, or to establish a client base here.").

Even if Hunt's written and telephonic communications to Plaintiff in New York

can be considered "transact[ions] [of] business within the state," none of Plaintiff's

causes of actions arises out of these "transactions."  Though it is very doubtful that

Plaintiff states any valid cause of action based on Hunt's preparation and filing of a "false

and fraudulent" tax return on behalf of the estate, such a cause of action, if it existed,

would not arise from Hunt's mailing of a copy of the tax return to Hunt, but from the

actual filing of the return with the IRS.

Because Plaintiff's Amended Complaint does not support the exercise of personal

jurisdiction under New York's long-arm statute, Hunt's motion to dismiss is granted

pursuant to Fed. R. Civ. P. 12(b)(2).


*Standard for deciding a Rule 12(b)(6) motion to dismiss*

Danske Bank has moved to dismiss Plaintiff's Amended Complaint pursuant to

Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion to dismiss, the court is to

accept as true all facts alleged in the complaint and draw all reasonable inferences in

favor of the plaintiff.  *Fernandez v. Chertoff,* 471 F.3d 45, 51 (2d Cir. 2006).  However,

the court need not credit a plaintiff's "legal conclusions, deductions or opinions couched

as factual allegations." *See, e.g., In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Pursuant to Fed. R. Civ. P. Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. "The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (quoting *Fernandez,* 471 F.3d at 51).

The Court is generally limited to "the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

As noted, the Maine Superior Court recently addressed Plaintiff's alleged ownership of the coin collection and Moose Pond Property and decided these issues against her in *Lipin v. Estate of Lipin*. *See* No. 05-145, at 2–3, 8–9 (Me. Super. Oct. 23, 2007) (order granting summary judgment). Because Plaintiff has had her day in court, the Amended Complaint in the instant action would ordinarily be subject to dismissal

based on principles of collateral estoppel.  However, Plaintiff has informed the Court that

she is in the process of appealing the Maine Superior Court decision.  Because of the

pending appeal, that decision is not yet final and does not yet have preclusive effect.

Thus, this Court will address the Amended Complaint without relying upon the *Lipin v.*

*Estate of Lipin* decision.


*Choice of law*

All events underlying Plaintiff's alleged causes of action against Danske Bank

occurred in Denmark.  However, both Plaintiff and Danske Bank apparently assume that

New York law applies, as each cites only New York law in their briefs.  "[S]ince neither

party has raised any choice of law issues, it can be said that they have consented to the

application of the forum state's law."[8]  *Mangual v. Pleas*, No. 02 Civ. 8311, 2005 WL

2179083, at *2 n.1 (S.D.N.Y. Sept. 8, 2005); *see also Clarkson Co. Ltd. v. Shaheen*, 660

F.2d 506, 512 (2d Cir. 1981) ("[N]one of the parties claimed the applicability of

Canadian law or asserted that it differs from that of New York.  Each seems to have

assumed that New York law governs.  Hence, the district court was not obligated to take

judicial notice of Canadian law and correctly applied forum law."); *Henneberry v.*

*Sumitomo Corp. of Am.*, No. 04 Civ. 2128, 2005 WL 991772, at *5 n.3 (S.D.N.Y. Apr.

27, 2005) ("[T]he parties have not raised choice of law issues. Instead, the parties' briefs

---

[8] Danske Bank asserted in its opening brief, as part of its forum non conveniens argument, that if there is a
conflict between Danish law and New York law, Danish law will apply to this action.  (Danske Bank Br.
6.)  However, Danske Bank did not discuss Danish law or determine whether a conflict existed, and
proceeded to analyze each of Plaintiff's cause of actions under New York law.  (Danske Bank Br. 8–10.)
Subsequently, Plaintiff did not assert that Danish law should be applied in her opposition brief and Danske
Bank did not address the issue in its reply brief.  Given Danske Bank's ambiguous position with respect to
the applicable law and Plaintiff's failure to address the issue at all, the Court will assume, at least for the
purpose of the instant motion, that the parties have consented to the application of the law of the forum
state.

assumed that New York State law applies.  Where the parties so assume, the Court need not address choice of law *sua sponte*.").

*Plaintiff's claims against Danske Bank*

The Court interprets Plaintiff's Amended Complaint as asserting three categories of claims against Danske Bank.  First, Plaintiff asserts claims based upon an alleged contractual relationship between Plaintiff and Danske Bank.[9]  Second, Plaintiff asserts that Danske Bank is liable for losses or damage to the coin collection.[10]  Finally, Plaintiff asserts that Danske Bank committed the intentional torts of false imprisonment and intentional infliction of emotional distress.  (Am. Compl. ¶ 39.)  Plaintiff's claims will be addressed in order.

*Claims relating to Plaintiff's alleged contractual relationship with Danske Bank*

Plaintiff repeatedly states in her Amended Complaint that she had "joint signatory authority" to the safe deposit box located at Danske Bank's Copenhagen branch.  (Am. Compl. ¶ 42; *see also* Am Compl. ¶¶ 4, 28, 38.)  The claim that a "joint signatory" relationship existed is not an assertion of fact but Plaintiff's legal conclusion regarding her alleged contractual relationship with Danske Bank.  The Court is not required to accept Plaintiff's legal assertions as true.  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

---

[9] These causes of action include breach of contract (Am. Compl. ¶¶ 39, 41, 42), breach of fiduciary duty (Am. Compl. ¶ 38), breach of duty as bailee (Am. Compl. ¶ 41), and "breach of warranty of fitness, safety, and security extended to the customers of Danske Bank" (Am. Compl. ¶ 44).

[10] These causes of action include conversion (*see, e.g.*, Am. Compl. ¶¶ 16, 22, 28, 41), breach of duty as bailee (Am. Compl. ¶ 41), and gross negligence (Am. Compl. ¶¶ 43, 44).

Plaintiff does not allege any facts indicating that she was the lessee of the safe deposit box in Copenhagen, that she entered into any other agreement with Danske Bank regarding the safe deposit box, or that she has any rights to the safe deposit box under any agreement between Danske Bank and Dr. Lipin.[11]  Plaintiff therefore has not alleged facts to indicate that Danske Bank was under any obligation to allow Plaintiff's access or to prevent Bergquist's access to the safe deposit box.  Therefore, Plaintiff does not state a claim upon which relief can be granted for breach of contract (Am. Compl. ¶¶ 39, 41, 42), breach of fiduciary duty (Am. Compl. ¶ 38),[12] breach of duty as bailee (Am. Compl. ¶ 41), or "breach of warranty of fitness, safety, and security extended to the customers of Danske Bank" (Am. Compl. ¶ 44).

*Claims for loss or damage related to the coin collection*

Plaintiff's only basis for her claim that she owns the coin collection is a letter signed by her father on February 3, 1990 which states, "This is to attest that as of this date my entire numismatic collection, valued at $8,500, has been given as a gift to my daughter, Joan Lipin, who resides at 45 East 89 Street, New York, NY."  (Am. Compl.

---

[11] Plaintiff apparently acknowledges that the rental agreement for the safe deposit box was between Danske Bank and Dr. Lipin (Am. Compl. ¶ 42), but does not indicate the factual basis for her claim that she had "joint signatory authority" or any other right of access.  Danske Bank states, however, that Dr. Lipin had granted Plaintiff a power of attorney for the safe deposit box (Apr. 3, 2007 Decl. of Niels Willemann in Support of Danske Bank's Mot. to Dismiss the Am. Compl. ("Willeman Decl.") ¶¶ 5–6), and that this power of attorney expired upon Dr. Lipin's death per the terms of Dr. Lipin's rental agreement.  (Willeman Decl. ¶¶ 5–8.)  In a related action before this Court, Plaintiff acknowledges that she was authorized to access the safe deposit box as a result of a power of attorney granted by her father.  *See* Am. Compl. ¶ 18, *Lipin v. Bergquist*, 07 Civ. 7833 (S.D.N.Y. filed Dec. 3, 2007).  As exhibits to her Amended Complaint in *Bergquist*, Plaintiff attaches correspondence with Danske Bank in which it explains that the rental agreement for the safe deposit box was between Dr. Lipin and Danske Bank, that Plaintiff was not a party to this agreement, and that under the terms of that agreement, Plaintiff's right of access terminated upon Dr. Lipin's death.  *See id.* Exs. 7, 9, 10.

[12] Danske Bank correctly points out that, even if Plaintiff was the lessee of the Box, under New York law, "the rental of a safe deposit box does not create a fiduciary relationship."  *Pecoraro v. M & T Bank Corp.*, 782 N.Y.S.2d 481, 483 (N.Y. App. Div. 2004).

¶ 21.)  Plaintiff does not allege that she ever received this letter or even knew of its existence while her father was alive.  Nevertheless, Plaintiff asserts that the letter effected an *inter vivos* gift of the coin collection from her father to her.  (Am. Compl. ¶¶ 11, 13, 21.)

"The elements necessary for a valid *inter vivos* gift are (1) intent of the donor to make an irrevocable present transfer of ownership; (2) physical or constructive delivery, sufficient to divest the donor of dominion and control over the property; and (3) acceptance of the gift by the donee."  *Chiaro v. Chiaro*, 623 N.Y.S.2d 312, 314 (N.Y. App. Div. 1995).  Plaintiff does not allege actual or constructive delivery of the coin collection or the February 3, 1990 letter.  Even if Plaintiff were actually a "joint signatory" to the Box, Dr. Lipin's storage of the coin collection in a jointly owned safe deposit box would not constitute delivery "sufficient to divest [him] of dominion and control."  *Id.*; *see also, e.g., In re Kennedy's Estate*, 290 N.Y.S.2d 964, 968 (N.Y. Sur. 1968) ("To constitute delivery, the grantor must relinquish all possession and control over the property and retain no power to revoke or recall it.  Here, the grantor was at liberty at any time to remove the deed from the safe-deposit box and destroy it. . . . The fact that the box was registered in the joint names of the administratrix and the decedent negates the idea of a complete delivery.  In fact, joint custody negatives any idea of a gift.") (citations omitted); *Chambers v. McCreery*, 106 F. 364, 368–70 (4th Cir. 1901) (finding that storage of bonds in jointly owned safe deposit box did not divest alleged donor of control so as to constitute effective delivery).

Because Plaintiff does not allege any facts to support her ownership of the coin collection, she cannot allege injury based on loss or damage of the coin collection and

therefore does not state a claim upon which relief can be granted for conversion (*see, e.g.,* Am. Compl. ¶¶ 16, 22, 28, 41), breach of duty as bailee (Am. Compl. ¶ 41), or gross negligence (Am. Compl. ¶¶ 43, 44).  *See, e.g., Uribe v. Merchants Bank of N.Y.*, 239 A.D. 2d 128, 128 (N.Y. App. Div. 1997) (dismissing plaintiff's claims for damages against bank after property was stolen from safe deposit box because plaintiff was not the owner of the contents of the safe deposit box).

*Intentional torts*

Plaintiff asserts a cause of action for false imprisonment against Danske Bank for "coercing her to surrender" her passport in order to photograph it.  (Am. Compl. ¶ 39.)

"False imprisonment is an unlawful detention contrary to the will of the person detained, accomplished with or without process of law.  A prima facie case of the intentional tort of false imprisonment is established upon a showing that:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that [s]he was confined; and (4) the confinement was not otherwise privileged, such as confinement pursuant to a warrant or with probable cause or immunity protection."  *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).  "In addition, '[a] false imprisonment claim requires a prima facie showing of actual confinement or threatening conduct.'" *Albury v. J.P. Morgan Chase*, 03 Civ. 2007, 2005 WL 746440, at *13 (S.D.N.Y. Mar. 31, 2005) (quoting *Campoyerde v. Sony Pictures Entm't,* 01 Civ. 7775, 2002 WL 31163804, at *8 (S.D.N.Y. Sept. 30, 2002)).

Plaintiff does not allege that she was actually confined or threatened by Danske Bank and therefore does not state a claim for false imprisonment.  *See, e.g., Cellamare v.*

*Millbank, Tweed, Hadley & McCloy LLP*, No. 03-CV-0039, 2003 WL 22937683, at *8 (E.D.N.Y. Dec. 2, 2003) (finding allegations insufficient to state a claim for false imprisonment where plaintiff alleged that she " was brought to a small room, interrogated for hours, called names, not told that she could leave or have counsel present, and was induced to sign [a] statement [stating that plaintiff had disclosed her employer's confidential information] with a promise that she would then be able to leave").

Plaintiff alleges that Danske Bank engaged in intentional infliction of emotional distress "by conduct so outrageous as to exceed all possible bounds of decency" by preventing Plaintiff from making an inventory of the contents of the safe deposit box. (Am. Compl. ¶ 39.)  Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983).  Danske Bank's decision not to allow Plaintiff to access the safe deposit box cannot satisfy this standard.  Plaintiff therefore does not state a claim for intentional infliction of emotional distress.

*Liability based on alleged conspiracies*

Plaintiff also attempts to attribute liability to each defendant for the actions of the other based on alleged conspiracies involving the defendants and many others.  Under New York law, a plaintiff may allege conspiracy to "connect the actions of separate defendants with an otherwise actionable tort." *Am. Bldg. Maintenance Co. of N.Y. v.*

*Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 318 (N.D.N.Y. 2007).  However, to plead the existence of such a conspiracy, the plaintiff must allege the underlying tort and "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *See, e.g., id.*  "[M]ore than a conclusory allegation of conspiracy or common purpose is required to state a cause of action against a nonactor, who must have allegedly engaged in some 'independent culpable behavior.'" *Id.*

Plaintiff's allegations relating to conspiracy are wholly conclusory and insufficient to state a claim against Danske Bank for the actions of Hunt based on conspiracy.  Plaintiff does not allege that Danske Bank and Hunt have ever communicated for any reason, much less entered into a common agreement to injure Plaintiff.

Therefore, Plaintiff does not state a claim upon which relief can be granted against Danske Bank based on Plaintiff's allegations regarding Hunt.

Because Plaintiff states no valid causes of action against Danske Bank, its motion to dismiss is granted pursuant to Fed. R. Civ. P. 12(b)(6).

*Defendants' Motions to Strike Plaintiff's Amended Complaint in* Lipin v. Bergquist *from the Record*

There is a related action before this court, captioned *Lipin v. Bergquist*, 07 Civ. 7833.  This action was originally filed in New York state court by way of a summons with notice and was removed to federal court.  The *Bergquist* action was consolidated with this action for pretrial purposes.  On October 29, 2007, the Court ordered Plaintiff to

file a complaint in the *Bergquist* action. Plaintiff filed her complaint on November 26, 2007 and filed an amended complaint on December 7, 2007.

Though *Bergquist* and this action have not been consolidated for all purposes, the *Bergquist* Amended Complaint lists both actions in its caption and purports to assert causes of action against Hunt and Danske Bank as well as against Bergquist. While the *Bergquist* Amended Complaint incorporates by reference much of the Amended Complaint in this action, it also adds an additional 279 paragraphs elaborating upon the "ever-broadening conspiracy" involving Bergquist, Hunt, and others to steal her property and launder it through Dr. Lipin's estate to be extracted as attorney's fees. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 142 (S.D.N.Y. 2002) (noting that "each rejection [of Ms. Lipin's claims in a previous litigation] has led to elaboration [] of an ever-broadening conspiracy theory"). Both Hunt and Danske Bank have moved to strike the *Bergquist* Amended Complaint from the docket of the instant action.

Plaintiff's attempt to assert new claims against Hunt and Danske Bank in the *Bergquist* Amended Complaint is nothing more than an indirect attempt to amend her claims against Hunt and Danske Bank in the present action. Under Fed. R. Civ. P. 15(a), a plaintiff may amend her complaint once without leave of the court before a responsive pleading has been filed. Any further amendment requires leave of the court or consent of the opposing parties. Though leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), Plaintiff did not apply for leave to amend her complaint against Hunt and/or Danske Bank. The Court does not believe it is in the interests of justice to permit Plaintiff to amend her complaint while motions to dismiss that complaint

have already been filed and are pending.  In addition, largely for the reasons stated above, any such amendment in this case would be futile.  The Court has reviewed the *Bergquist* Amended Complaint and finds that (1) it contains no additional allegations that would support a *prima facie* showing of personal jurisdiction over Hunt, and (2) it contains no well pleaded allegations that would change the Court's analysis regarding Plaintiff's claims against Danske Bank, and (3) its allegations regarding the liability of Danske Bank for the actions of Bergquist and/or Hunt based on conspiracy, agency, or a similar theory of liability are wholly conclusory and do not state a claim for which relief can be granted.

Hunt and Danske Bank's motions to strike the *Bergquist* Amended Complaint from the record are granted.


*Plaintiff's Motion to Strike*

On May 4, 2007, Plaintiff filed a "Cross Motion . . . to Strike Matters Outside the Pleadings," requesting an order striking the affidavit and exhibits attached to Hunt's April 6, 2007 Notice of Motion, as well as all references to these documents in Hunt's accompanying brief.  (Mem. of Joan C. Lipin in Opp'n to Mot. to Dismiss by David E. Hunt ("Pl.'s Opp'n Br.") 1–2.)

Hunt's Notice of Motion includes several documents as well as an affidavit from attorney Howard Chen attesting to the authenticity of these documents.  These documents are:  (1) deeds recorded in the Cumberland County Deed Registry concerning the Moose Pond Property; (2) a "Notice of Lis Pendens" and "Notice of Statement of Claim to be Recorded as Same as Deed" filed by Plaintiff in the Cumberland County Deed Registry

with respect to the Moose Pond Property; (3) a copy of Plaintiff's Second Amended

Complaint filed by Plaintiff in *Lipin v. Estate of Lipin*; (4) a copy of a petition submitted

by Plaintiff to the Cumberland County Probate Court in *In re Estate of Theodore Lipin*

(the Maine probate proceedings relating to Dr. Lipin's estate); and (5) copies of the

Maine Probate Court's orders denying two motions to disqualify counsel submitted by

Plaintiff in *In re Estate of Theodore Lipin*.

Plaintiff notes that under Fed. R. Civ. P. 12(b), if matters outside the pleadings are

presented to and not excluded by a court in connection with a Rule 12(b)(6) motion to

dismiss, that motion is converted to a Rule 56 motion for summary judgment. In an

Order dated March 8, 2007, this Court denied a request by Hunt to file a motion for

summary judgment. Plaintiff seems to argue that failure to exclude the materials attached

to Hunt's Notice of Motion would convert Hunt's motion into a motion for summary

judgment and violate the Court's Order.

All of the documents attached to Hunt's Notice of Motion are part of the public

record. Hunt's submission of these documents in support of his motion to dismiss was

not inappropriate because "[i]t is well established that a district court may rely on matters

of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Pani v. Empire

Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). However, in granting Hunt's

motion to dismiss, the Court has not relied upon any of the documents attached to Hunt's

Notice of Motion. Plaintiff's motion is therefore denied as moot.

*Hunt's Motion for Sanctions*

Defendant Hunt has filed a motion for sanctions pursuant to Fed. R. Civ. P. 11, requesting his reasonable attorney's fees and expenses in this action and an injunction against Plaintiff prohibiting her from filing any additional related lawsuits without prior approval of the Court.

The Court notes that Plaintiff has litigated similar claims before other courts and against numerous defendants, and that Plaintiff has been sanctioned many times already for her litigation conduct in actions relating to Dr. Lipin's estate and in other actions. (*See, e.g.,* June 14, 2007 Decl. of David E. Hunt ("Hunt Decl.") Ex. 5 (Order of Ct., *Ellis v. Lipin*, No. 06-2605 (1st Cir. May 4, 2007) (ordering $500 sanction for filing appeal with "no chance of success")); Hunt Decl. Ex. 9 (Order Granting Resp't and Cross Pet'r Ann Susan Markatos's Mot. to Enjoin Joan C. Lipin From Filing Further Pleadings and Lawsuits Without Prior Approval of the Probate Ct., *In re Estate of Lipin*, No. 2005-1642 (Me. Probate Ct. May 23, 2007) (enjoining Plaintiff from filing additional related documents or lawsuits without prior permission of the Court)); Hunt Decl. Ex. 6 (Order, *In re Estate of Lipin*, No. CV-06-515 (Me. Super. Dec. 18, 2006) (ordering $300 sanction for failing to comply with discovery requests)); Hunt Decl. Ex. 7 (Order, *In re Estate of Lipin*, No. 2005-1642 (Me. Probate Ct. June 30, 2006) (ordering Ms. Lipin to pay movant's reasonable attorney fees related to motion to strike "immaterial, impertinent, and scandalous" sections of affidavits)); Hunt Decl. Ex. 8 (Order on Dr. Robert G. Lipin and Dr. Evelyn F. Ellis' Mot. to Strike and for Sanctions, *Ellis v. Lipin*, No. BRIDC-SA-06-155, (Me. Dist. Ct. May 24, 2007) (ordering $250 sanction for filing affidavits including "clearly scurrilous" and irrelevant statements))); *Lipin v. Nat'l Union Fire Ins.*

*Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 142 (S.D.N.Y. 2002) (issuing "extraordinary remedy of injunctive relief barring the commencement of further related litigation").

The Court will not issue sanctions at this time but may consider the appropriateness of meaningful sanctions at a later time. At such time, the Court will consider the issue in light of Plaintiff's entire course of litigation conduct, which may be relevant to the question of whether this action and/or the *Bergquist* action was filed with a proper purpose. The Court takes this opportunity to explicitly warn Plaintiff that if she chooses to engage in conduct similar to that for which she has been sanctioned by other courts, this Court will not hesitate to impose monetary and/or other penalties. The Court has serious concerns about Plaintiff's litigation tactics and her motivation for filing this action. In finding that Plaintiff's conduct in this action does not warrant sanctions at this time, the Court has given Plaintiff every benefit of the doubt. However, Plaintiff's "*pro se* status does not insulate [her] from the ambit of Fed. R. Civ. P. 11(b)," and the Court may later reconsider its assessment in light of Plaintiff's subsequent actions. *See, e.g., Commer v. Am. Fed'n of State, County and Mun. Employees*, 272 F. Supp. 2d 332, 340 (S.D.N.Y. 2003). The Court cautions Plaintiff that any submission to this Court must be supported by a coherent, relevant, nonfrivolous legal argument and by factual contentions with at least a reasonable likelihood of evidentiary support. *See* Fed. R. Civ. P. 11(b). In particular, any attempts by Plaintiff to relitigate claims that the Court has already ruled upon, unless "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," will be a violation of Rule 11 and will be sanctioned. *See* Fed. R. Civ. P. 11(b)(2).

## CONCLUSION

For the reasons discussed above, both defendants' motions to dismiss [8, 10] are

GRANTED, and Plaintiff's Amended Complaint is dismissed with prejudice. Both

defendants' motions to strike the *Bergquist* Amended Complaint [51, 54] are

GRANTED. The clerk is requested to remove the *Bergquist* Amended Complaint [46,

47, 48] from the 07 Civ. 226 docket. It should not be removed from the 07 Civ. 7833

docket. Plaintiff's motion to strike [12] is DENIED. Hunt's motion for sanctions [25] is

DENIED. The clerk is requested to close this case.

SO ORDERED.

Dated: New York, New York
       February 20, 2008

Richard J. Holwell
United States District Judge